REGAN, Judge.
Plaintiff, Walter H. S. Wolfner, the owner of at least two percent of the corporation’s stock for more than six months and engaged in a non-competitive business, instituted this suit endeavoring to obtain a writ of mandamus directed to the defendant, Fairfax Shipside Storage, Inc., ordering it to permit plaintiff to examine the books thereof.
Defendant pleaded the exceptions of no right of action and of estoppel, which subsequently, at the request of its counsel, were referred to the merits, and then answered denying that the plaintiff possessed the right which is ordinarily conferred upon a stockholder to examine the books of the corporation.
From a judgment overruling the exception of no right of action and the plea of estoppel and making the writ of mandamus peremptory, defendant has prosecuted this appeal.
The record reveals that the defendant was incorporated March 31, 1947. The articles thereof authorized the issuance of 500 shares of Class “A” stock of $100 par value, of which 152 shares were actually issued. It was created for the purpose of conducting a general storage business, including the storage of cotton upon which loans had been made by the United States Government; despite efforts to procure this type of business it was unsuccessful in inducing the Commodity Credit Corporation, an agency of the government, to use the corporation’s storage facilities. Its management learned, through Richard Muckerman of St. Louis, that the plaintiff, a resident of the State of Illinois, was in a position to obtain this kind of business, provided the defendant’s storage facilities met the requirements of the Commodity Credit Corporation. The business contact was made and, thereafter, the interested parties engaged in a discussion of their respective financial interests.
Plaintiff suggested that instead of receiving as remuneration from the corporation, a commission on the rentals for storage, it would be more profitable tax-wise to have stock of the corporation issued to him. The defendant agreed with this idea and, accordingly, the charter of the corporation was amended and a Class “B”’ stock was created[1] which consisted of 18,000 shares. The amendment to the charter stipulated that this stock was “without any right or privilege to participate or vote in the affairs', conduct or management of this corporation.” The Class “A” stock had been given “full and exclusive voting rights and privileges in the affairs and management of this corporation” in the original charter, and these rights were reiterated in the amendment.
Defendant, as a result of an agreement, between plaintiff and its other stockholders, *338 placed a value of $1 per share upon the stock. The plaintiff performed the services of obtaining the cotton, it being understood that his stock would ultimately be redeemed for $10 per share [2] and that such redemption would be out of the first monies received from storage fees on cotton secured by plaintiff[3] to be stored in defendant’s warehouse on the basis of 5 cents per bale per month for every bale in storage. It was estimated that the cotton would remain in storage about three years.
The President and Secretary of the defendant corporation, in conformity with the requirements of the Business Corporation Act[4], filed the usual affidavit in the Mortgage and Secretary of State Offices relating that Class “B” stock was issued for the consideration of “good will of and the services rendered by the holder or holders of said shares” and it was therein asserted that the good will and services, in the opinion of the Directorate of the corporation, were valued at $18,000 or $1 per share for 18,000 shares.
It is unimportant in determining the issues involved herein, but it is significant to note that the four[5] original incorporators of the defendant corporation who, as owners of the stock thereof, possessed exclusive voting privileges and the right to manage the affairs of the corporation, sold their holdings in November, 1949, to the J. H. R. Investment Company[6] of St. Louis, Missouri.
Defendant maintains that the exceptional conditions under which the stock was issued, as reflected by the amendment of its charter, had the effect of causing plaintiff to waive his right to examine the books and, in addition thereto, this right was further restricted by the very nature of the agreement to redeem the stock at $10 per share out of the first earnings accruing from the storage of cotton which had been procured by the plaintiff.
Plaintiff simply contends that neither the conditions under which the stock was issued nor the method of redemption thereof either restricted or caused plaintiff to waive his statutory right to examine the books of the corporation.
The only question posed for our consideration is whether the charter restriction [7] placed on plaintiff’s stock together with the method of redemption thereof [8], had the effect of depriving him of his statutory right [9] to examine the books of the corporation.
The trial judge likewise believed that the foregoing question was the only one posed for his consideration and it was his opinion that the plaintiff met all of the requirements imposed by LSA-R.S. 12:38E and, therefore, he was entitled to examine the books of the defendant corporation.
This Section of the Business Corporation Act provides:
*339 “Every, shareholder, except a business competitor, who has been the holder of record of at least two per cent of all outstanding shares of the corporation for at least six months shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper and reasonable purpose, any and all of the books and records of the corporation, and to make extracts therefrom.”
In conformity with the above section of the Act plaintiff established, without contradiction, his qualifications as a stockholder to examine the corporation’s books for the reason that the evidence adduced herein revealed, without equivocation, that he owned more than two percent of all of the outstanding shares of the corporation for at least six months prior to his request for examination of the books thereof and that he was not engaged in a competitive business.
The amendment to the charter may only be interpreted to mean that the stock issued to plaintiff was to possess no voting privileges and was to confer upon the stockholder thereof no power of management. It does not either specifically or by implication provide that the stockholder is deprived of his stautory right to examine the corporation’s books. It would have been very simple indeed to have inserted such a restriction in the amendment to the charter had the Officers and Directors of the corporation, all experienced businessmen, so desired, but even assuming, without deciding, that such a restriction would have been lawful or not contra bonos mores, the amendment cannot be construed so as to conform to the defendant’s contention and thus restrict plaintiff’s right to examine the books of the corporation.
We are likewise of the opinion that the method of redeeming the stock, irrespective of whether we accept the plaintiff’s or defendant’s version thereof, did not restrict plaintiff’s right to or estop him from examining the books of the corporation. The trial judge, in disposing of this contention by the defendant, observed:
“Assuming arguendo (but without deciding) that Relator might waive his right to an inspection of the books and records, such waiver must perforce be clear, direct and unequivocal. The Court does not find that Relator waived such rights in this case either directly or by compelling inference.”
It is too well settled to need citation in support thereof that the doctrine of estoppel is not favored by the courts and it must be proved by the most positive evidence and cannot rest upon a foundation of inference, implication and innuendo.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. August, 1949.

. 2,500 shares were purchased from plaintiff at $10 per share by Richard Mucker-man in 1950 or 1951, who was then President of J. H. R. Investment Company of St. Louis, which owned the defendant corporation. Ho was also President of the defendant corporation when the answer to this suit was filed.

. Plaintiff disputes this statement and asserts that the stock would be redeemed from “the net earnings over the expenses of operation.”

. LSA-R.S. 12:1.

. Alcee P. Neeb of New Orleans; William J. Kearney of New Orleans; George M. Morris and Merl M. Bowman of Kansas City, Missouri.

. Richard Muckerman was the President of that Corporation and he is also the President of the defendant herein.

. This stock was issued by the defendant to the plaintiff, as revealed by the amendment to the corporation’s charter, “without any right or privilege to participate or vote in the affairs, conduct or management of this corporation.”

. Plaintiff’s stock was to be redeemed at $10 per share out of the first monies accruing from the storage fees on cotton stored in defendant’s warehouse on the basis of 5 cents per bale per month.

. LSA-R.S. 12:38E.